UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DONNA GARFIELD,

    Plaintiff,

v.

OCWEN LOAN SERVICING, LLC,

    Defendant.

**DECISION AND ORDER**

14-CV-6440 EAW

---

## INTRODUCTION

Plaintiff Donna Garfield ("Plaintiff") brings this action against defendant Ocwen Loan Servicing, LLC ("Defendant") alleging violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (Dkt. 1). Presently before the Court is Defendant's motion to dismiss the complaint. (Dkt. 6). For the foregoing reasons, Defendant's motion is granted, and Plaintiff's complaint is dismissed in its entirety.

## BACKGROUND

The following facts are based on the allegations contained in Plaintiff's complaint. (Dkt. 1).

Plaintiff incurred a mortgage loan debt with Litton Loan Servicing, L.P. (*Id.* at ¶ 9). Plaintiff defaulted on the debt. (*Id.* at ¶ 11).

In or about 2009, Plaintiff filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of New York. (*Id.* at ¶ 13). The mortgage debt was listed as one of Plaintiff's debts in the bankruptcy proceeding. (*Id.*). Defendant

acquired the debt after Plaintiff's default and during the pendency of the bankruptcy proceeding. (*Id.* at ¶¶ 12, 13). Plaintiff alleges that she paid the arrears for the subject debt by monthly payments through her bankruptcy plan. (*Id.* at ¶ 13).

In or about August 2013, Plaintiff's bankruptcy was discharged. (*Id.* at ¶ 14). After the discharge, Plaintiff was to make payments in the amount of $938.00 a month towards her mortgage. (*Id.* at ¶ 15).

Plaintiff alleges that Defendant never sent her any statement for her mortgage payments from July 2013 through February 2014. (*Id.* at ¶ 16). Plaintiff made a payment to Defendant in the amount of $938.00 in November 2013.[1] (*Id.* at ¶ 17).

Plaintiff alleges that in or about February 2014, Defendant demanded that Plaintiff pay $21,825.15 for the alleged debt, or it would begin foreclosure proceedings. (*Id.* at ¶ 18). Plaintiff further alleges that in or about February 2014, she obtained a copy of her Equifax credit report, and discovered that Defendant reported the debt in the amount of $18,000, which had been included in her Chapter 13 bankruptcy. (*Id.* at ¶ 19). Plaintiff disputed Defendant's reporting of the debt to Equifax in or about March 2014. (*Id.* at ¶ 20). Equifax also investigated the tradeline for the debt with Defendant; after the investigation, Defendant reported the debt for the amount of $23,532. (*Id.*).

On or about March 17, 2014, Plaintiff received a bill from Defendant for her monthly payment of $938.18, plus a current arrears payment of $6,672.34. (*Id.* at ¶ 21).

---

[1] Plaintiff's complaint states that she made a payment to Defendant in November 2014. (Dkt. 1 at ¶ 17). However, the 2014 date appears to be a typographical error. (*See* Dkt. 9 at 2).

On or about April 26, 2014, Plaintiff received a delinquency notice from Defendant stating that she owed $22,684.36. (*Id.* at ¶ 22). Plaintiff alleges that as a result of Defendant's actions, she "became nervous, upset, anxious, and suffered from emotional distress." (*Id.* at ¶ 23).

## PROCEDURAL HISTORY

Plaintiff filed her complaint on July 31, 2014, alleging that Defendant violated the FDCPA when it attempted to collect a debt relating to Plaintiff's mortgage, when said debt was previously discharged in a bankruptcy proceeding. (Dkt. 1 at ¶¶ 13-26). Specifically, Plaintiff alleges that Defendant violated the FDCPA by stating on various occasions that Plaintiff owed $21,825.15, $18,000, and $22,684.36, which were inaccurate amounts for the subject debt; by communicating on Plaintiff's credit report that she owed $23,532 on the debt; by stating in February 2014, that Plaintiff was in danger of losing her home; by failing to communicate the mini-Miranda warning[2] during conversations with Plaintiff; and by failing to send Plaintiff the 30-day validation notice within five days of Defendant's initial communication with her. (*Id.* at ¶ 25(A-E)).

On August 13, 2014, the Court granted Defendant an extension of time to answer, move, or otherwise respond to Plaintiff's complaint until and including September 19, 2014. (Dkt. 5). On September 19, 2014, Defendant filed the instant motion to dismiss,

---

[2] "[S]ection 1692e(11) [of the FDCPA] requires that the initial communication from the debt collector contain language notifying the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and subsequent communications must disclose that the communication is from a debt collector. These requirements are often referred to as the '*Mini-Miranda*' warnings." *Ostrander v. Dentistry by Dr. Kaplansky, PLLC*, No. 07-CV-852-JTC, 2010 U.S. Dist. LEXIS 30650, at *12 (W.D.N.Y. Mar. 30, 2010) (emphasis in original).

arguing that Plaintiff's filing a complaint in federal court is an improper attempt to evade the Bankruptcy Code, as allegations stemming from efforts to collect debts previously discharged in bankruptcy are claims for violations of the Bankruptcy Code's automatic stay, and are properly venued in bankruptcy court. (Dkt. 6-1 at 5). Plaintiff responded on November 11, 2014 (Dkt. 9), and Defendant replied on December 5, 2014 (Dkt. 10). Oral argument was held on January 5, 2015, and the Court reserved decision on the motion. (Dkt. 11).

## DISCUSSION

### I.  Legal Standard on a Motion to Dismiss

"'In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.'" *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v.*

*Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration in original) (internal quotations and citations omitted).

## II. Plaintiff Must Pursue Her Claims in Bankruptcy Court

Defendant argues that Plaintiff's complaint must be dismissed because her claims pursuant to the FDCPA are claims for violation of the bankruptcy automatic stay and those allegations do not give rise to an independent cause of action under the FDCPA.[3]

---

[3] Defendant argues that a violation of the Bankruptcy Code's "automatic stay" does not give rise to an independent cause of action under the FDCPA. (Dkt. 6-1 at 7). The automatic stay provision, 11 U.S.C. § 362(a), provides that a bankruptcy petition operates as a stay on any action to collect a debt against a debtor during the pendency of a bankruptcy proceeding. Similarly, the discharge injunction provision, 11 U.S.C. § 524(a)(2), states that a bankruptcy discharge operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover, or offset any debt. Therefore, a closer examination of Plaintiff's complaint reveals that the automatic stay provision is not in play in this case, as the alleged violations by Defendant occurred after Plaintiff's debt was discharged, and not during the pendency of the bankruptcy proceeding. Rather, the relevant provision of the Bankruptcy Code applicable to this case is the discharge injunction provision. While the

(Dkt. 6-1 at 7). Plaintiff argues that the case law addressing the relationship between the Bankruptcy Code and the FDCPA is unsettled, and the Court should follow recent decisions of the Third and Seventh Circuits holding that the Bankruptcy Code does not preclude a plaintiff from seeking relief under the FDCPA. (Dkt. 9).

### A. The Bankruptcy Code and the FDCPA

"The United States Bankruptcy Code provides a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights." *E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 120 (2d Cir. 2001). Accordingly, as observed by the United States Supreme Court: "if . . . bankruptcy . . . [occurs], the debtor's protection and remedy [remain] under the Bankruptcy Act." *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974). To that end, a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. . . ." 11 U.S.C. § 524(a)(2). "The remedy provided by the bankruptcy code for a violation of the stay [or the discharge injunction] is a motion for contempt

---

automatic stay and discharge injunction are separate provisions in the Bankruptcy Code, they are treated as the same for purposes of evaluating FDCPA claims, and courts addressing alleged violations of the discharge injunction regularly cite to cases addressing violations of the automatic stay. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 504-05, 510-11 (9th Cir. 2002); *Yaghobi v. Robinson*, 145 F. App'x 697, 699 (2d Cir. 2005); *Necci v. Universal Fid. Corp.*, 297 B.R. 376, 379 (E.D.N.Y. 2003); *Diamante v. Solomon & Solomon, P.C.*, Bankr. L. Rep. (CCH) P78,525, 2001 U.S. Dist. LEXIS 14818, at *18-19 (N.D.N.Y. 2001); *Orr v. Allied Interstate, Inc.*, No. 8:11-CV-973 (NAM/RFT), 2012 U.S. Dist. LEXIS 130039, at *9-11 (N.D.N.Y. Sept. 12, 2012); *Degrosiellier v. Solomon & Solomon, P.C.*, No. 00-CV-1065, 2001 U.S. Dist. LEXIS 15254, at *13-17 (N.D.N.Y. Sept. 27, 2001).

pursuant to section 105 of the bankruptcy code." *Necci v. Universal Fid. Corp.*, 297 B.R. 376, 379 (E.D.N.Y. 2003) (citing 11 U.S.C. § 105(a)).

The FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair debt collection practices. *See Degrosiellier v. Solomon & Solomon, P.C.*, No. 00-CV-1065, 2001 U.S. Dist. LEXIS 15254, at *5 (N.D.N.Y. Sept. 27, 2001); *see also* 15 U.S.C. § 1692(e) ("It is the purpose of this title . . . to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.").

The sections of the FDCPA allegedly violated by Defendant include 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), and 1692g. (Dkt. 1 at ¶ 25(A-E)). Section 1692e, which prohibits "false or misleading representations," provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692f, which prohibits "unfair practices," provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692g, which prohibits "validation of debts," provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice. . . ." 15 U.S.C. § 1692g.

B.  **Preclusion of FDCPA Claims**

Courts that have addressed the issue of preclusion of FDCPA claims based on an alleged violation of the bankruptcy stay or discharge injunction are divided. *Compare Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510-11 (9th Cir. 2002) (Plaintiff's FDCPA claim precluded by the Bankruptcy Code), *and Burchalewski v. Wolpoff & Abramson, LLP*, No. 06-CV-443S, 2008 U.S. Dist. LEXIS 73625, at *5-6 (W.D.N.Y. Sept. 8, 2008) (no independent cause of action under the FDCPA for violation of the bankruptcy stay), *with Randolph v. IMBS, Inc.*, 368 F.3d 726, 729-34 (7th Cir. 2004) (recognizing FDCPA claim for violation of Bankruptcy Code's automatic stay provision), *and Peeples v. Blatt*, Case No. 00 C 7028, 2001 U.S. Dist. LEXIS 11869, at *13 (N.D. Ill. Aug. 14, 2001) (claims under both the Bankruptcy Code and the FDCPA can be maintained). However, "the majority view holds that a FDCPA claim is not available in such cases." *Necci*, 297 B.R. at 379.

Notably, the Second Circuit Court of Appeals has stated that while "[t]he FDCPA is designed to protect defenseless debtors and to give them remedies against abuse by creditors," "[t]here is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself." *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) (holding that the filing of a proof of claim in bankruptcy court cannot form the basis for an FDCPA claim); *see also Yaghobi v. Robinson*, 145 F. App'x 697, 699 (2d Cir. 2005) ("because the bankruptcy court is the appropriate forum to determine whether a creditor has, in fact, violated a discharge order, a plaintiff debtor who, as in this case, fails to

secure such a determination lacks a colorable factual basis to plead an unfair debt collection practice based only on a § 524 violation.").

Furthermore, "New York District Courts have generally concluded that there is *not* an independent cause of action under the FDCPA for the violation of a bankruptcy stay, and that such claims are precluded by the Bankruptcy Code." *Burchalewski*, 2008 U.S. Dist. LEXIS 73625, at *5.[4] In *Burchalweski*, a decision issued by this Court, the Honorable William M. Skretny, Chief Judge, United States District Court, noted that while the circuit courts disagree as to whether a plaintiff has an independent cause of action under the FDCPA, New York courts have generally concluded that there is not an independent cause of action. *Id.* at *4-5. The Court noted that permitting an independent cause of action under the FDCPA "'would circumvent the remedial scheme of the [Bankruptcy] Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt.'" *Id.* at *5-6 (quoting *Walls*, 276 F.3d at 510) (alteration in original). The Court therefore dismissed the plaintiff's claims that the defendant attempted to collect a debt that was stayed in bankruptcy and misrepresented the name of the debt owner.

---

[4]   The Court is cognizant that "the decisions of district courts, even those located within the same district, are not binding on other district courts." *Arculeo v. On-Site Sales & Mktg., LLC*, 321 F. Supp. 2d 604, 609 (S.D.N.Y. 2004), *aff'd*, 425 F.3d 193 (2d Cir. 2005). However, the decisions of other district courts, including decisions from the same district, are "relevant and persuasive." *Baldanzi v. WFC Holdings Corp.*, No. 07 Civ. 9551 (LTS)(GWG), 2008 U.S. Dist. LEXIS 95727, at *9 (S.D.N.Y. Nov. 14, 2008).

Other New York district courts are in agreement that the Bankruptcy Code precludes claims under the FDCPA. *See Necci*, 297 B.R. at 381 (concluding that where plaintiff alleged violations of 15 U.S.C. § 1692e of the FDCPA, the Bankruptcy Code "precludes claims under the FDCPA when those claims are based upon violations of the bankruptcy stay."); *Diamante v. Solomon & Solomon, P.C.*, Bankr. L. Rep. P78,525, 2001 U.S. Dist. LEXIS 14818, at *7-8 (N.D.N.Y. 2001) ("Plaintiff is, in effect, attempting to circumvent the enforcement and remedial scheme of the Bankruptcy Code, which provides a remedy for any violation of § 524 in the form of possible contempt sanctions. To permit such claims would thwart Congress' intent in promulgating the Bankruptcy Code to create a singular federal system to adjust all of the rights and duties of both creditors and debtors. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's state law claims on the grounds that the Bankruptcy Code preempts them."); *Orr v. Allied Interstate, Inc.*, No. 8:11-CV-973 (NAM/RFT), 2012 U.S. Dist. LEXIS 130039, at *9-11 (N.D.N.Y. Sept. 12, 2012) (dismissing plaintiff's claim that defendants attempted to collect a debt that had been discharged in a bankruptcy proceeding in violation of § 1692e of the FDCPA because "the bankruptcy court is the proper forum for determining in the first instance whether defendants violated the discharge order."); *Degrosiellier*, 2001 U.S. Dist. LEXIS 15254, at *16 (where plaintiff alleged violations of 15 U.S.C. §§ 1692e and 1692f of the FDCPA, "[t]his Court agrees with . . . the majority of other courts which have addressed the issue, that plaintiff is precluded from asserting any claims for money damages pursuant to the FDCPA which

are premised on conduct otherwise remedied or governed by provisions of the Bankruptcy Code.").

Plaintiff correctly notes that appellate and trial courts have reached inconsistent conclusions regarding whether the Bankruptcy Code precludes FDCPA claims. (Dkt. 9 at 7). Plaintiff cites a number of district and bankruptcy court decisions holding that FDCPA claims are not precluded by the Bankruptcy Code; however, none of these cases were decided by courts within the Second Circuit. (*Id.* at 7-8).

Plaintiff also argues that Defendant attempts to characterize the Second Circuit's decision in *Simmons* as adopting a broad approach to the preclusion of FDCPA claims, much like that adopted by the Ninth Circuit in *Walls*, when *Simmons* actually limited the scope of its findings to cases involving deceptive proof of claims filed in a bankruptcy case. (*Id.* at 10-11). However, Plaintiff fails to note that in *Burchalewski*, a case from this district, the Court relied on the *Walls'* court's characterization of the Bankruptcy Code's preclusion of FDCPA claims. *Burchalewski*, 2008 U.S. Dist. LEXIS 73625, at *5-6. Here, there is no reason to depart from the decision in *Burchalewski* in light of the Second Circuit's decision in *Simmons*. Rather, *Simmons* supports the reasoning of *Burchalewski*.

Plaintiff argues that the Seventh and Third Circuits have taken the approach of examining the differences between the Bankruptcy Code and the FDCPA to determine if there is an irreconcilable conflict between the statutes such that claims under the FDCPA should be precluded. *See Randolph*, 368 F.3d at 730; *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 275-76 (3d Cir. 2013). Plaintiff argues that the Court should adopt this

approach. (Dkt. 9 at 13). However, the Second Circuit has not adopted the approach of the Third and Seventh Circuits, and this Court declines to adopt it absent guidance from the Second Circuit. Indeed, the Second Circuit has, by all accounts, adopted a position contrary to the Third and Seventh Circuits that FDCPA claims are preempted when the debtor is already under the protection of the Bankruptcy Court. *Simmons*, 622 F.3d at 96.

Even if the Court adopted the approach of the Third and Seventh Circuits, as suggested by Plaintiff, Plaintiff's claims would still be barred because many of Plaintiff's allegations directly conflict with the Bankruptcy Code's discharge injunction provision. The Bankruptcy Code precludes a creditor from collecting or recovering a debt that was discharged in bankruptcy. *See* 11 U.S.C. § 524(a)(2) (bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. . . ."). The FDCPA provisions allegedly violated by Defendant include:

(1)  15 U.S.C. § 1692e(2), prohibiting the false representation of the character, amount, or legal status of any debt, or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt;

(2)  15 U.S.C. § 1692e(5), prohibiting a debt collector from threatening to take any action that cannot be legally taken or that is not intended to be taken;

(3)  15 U.S.C. § 1692e(8), prohibiting a debt collector from communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed;

(4) 15 U.S.C. § 1692e(10), prohibiting the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer;

(5) 15 U.S.C. § 1692e(11), providing that a debt collector must include in its initial communication with a debtor that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and that a debt collector must disclose in subsequent communications that the communication is from a debt collector;

(6) 15 U.S.C. § 1692f(1), prohibiting the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; and,

(7) 15 U.S.C. § 1692g(3)[5], providing that within five days after the initial communication with a consumer in connection with the collection of any debt, the debt collector must send the consumer a written notice containing a statement that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

The above-referenced FDCPA provisions allegedly violated by Defendant conflict with the Bankruptcy Code's discharge injunction because the FDCPA provisions regulate conduct that is forbidden by the discharge injunction. In other words, a debt collector cannot comply with the discharge injunction, which prohibits action to collect on a discharged debt, and comply with the provisions of the FDCPA, which presume action by a debt collector to collect on a debt. In short, by this Court's analysis, "the FDCPA claim

---

[5] Plaintiff does not specifically identify which section of 15 U.S.C. § 1692g was allegedly violated by Defendant, but Plaintiff does state in her complaint that Defendant violated § 1692g "by failing to send the consumer a 30-day validation notice within five days of the initial communications." (Dkt. 1 at ¶ 25(E)). Accordingly, the Court presumes that Plaintiff is alleging a violation of § 1692g(a)(3), which governs the right of the consumer to dispute the validity of a debt.

raises a direct conflict between the Code or Rules and the FDCPA," such that both laws cannot be enforced. *Simon*, 732 F.3d at 274 (3d Cir. 2013).

For example, Plaintiff claims that Defendant violated 15 U.S.C. § 1692e(11) because it failed to communicate to Plaintiff the mini-Miranda warning. Here, Defendant cannot comply with § 1692(e)(11) and the Bankruptcy Code's discharge injunction provision because, as explained by the Third Circuit Court of Appeals in *Simon*, "sending a § 1692e(11) notice [would violate] the automatic stay." *Id.* at 280. Therefore, "[i]f, as the [Plaintiff] argue[s], a § 1692e(11) claim could arise from the fact that the [Defendant's] letters . . . did not include the "mini-*Miranda*" notice, the [Defendant] would violate the automatic stay provision of the Bankruptcy Code by including the notice or violate the FDCPA by not including the notice. This conflict precludes allowing a claim under § 1692e(11). . . ." *Id.*

Many of the FDCPA provisions allegedly violated by Defendant involved communication with Plaintiff in an effort to collect a discharged debt. *See* 15 U.S.C. §§ 1692e(2), (5), (10), and (11), 1692g, and 1692f(1). Specifically, Plaintiff alleges that Defendant "demanded that [she] pay $21,825.15 for the alleged subject debt or they would begin foreclosure proceedings"; that she "received a bill from the Defendant for her monthly payment of $938.18 plus her current arrears payment of [$6,672.34]"; and that she "received a delinquency notice from the Defendant stating [she] owed $22,694.36." (Dkt. 1 at ¶¶ 18, 21-22). These communications with Plaintiff in an effort to collect on her previously-discharged debt, even if in compliance with the FDCPA, would nevertheless violate the discharge injunction. Furthermore, because the discharge

injunction prohibits any act to collect, recover, or offset a debt that has been discharged in bankruptcy, communications made to others in an effort to collect a discharged debt may violate the discharge injunction. Accordingly, Defendant's alleged violation of 15 U.S.C. § 1692e(8) by communicating on Plaintiff's credit reports that she owed a debt also arguably violated the discharge injunction.

In the last analysis, even if some of the FDCPA provisions allegedly violated by Defendant do not directly conflict with provisions in the Bankruptcy Code, there is no question that some of Defendant's alleged FDCPA violations conflict with the Bankruptcy Code. In light of the "clear federal policy . . . [of] avoidance of piecemeal adjudication," *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976), Plaintiff's proper remedy is to file a motion for contempt in bankruptcy court, pursuant to section 105 of the Bankruptcy Code. *See* 11 U.S.C. § 105(a); *Necci*, 297 B.R. at 379. In other words, even if this Court were to adopt Plaintiff's position and apply the analysis used by the Seventh and Third Circuits, Plaintiff's FDCPA claims still must be dismissed.

Finally, Plaintiff also argues that this Court should not read the Bankruptcy Code as preempting the FDCPA because the Supreme Court of the United States has stated that a Court should only rarely infer statutory repeal. (Dkt. 9 at 13-15). Plaintiff also notes that the Supreme Court of the United States has applied a federal statute in bankruptcy suits despite the existence of another bankruptcy statute covering the same grounds (*id.* at 15-17), and that the Supreme Court has been reluctant to limit the FDCPA "because other preexisting rules and remedies may also apply to the conduct alleged to violate the Act"

(*id.* at 17-18). However, the Supreme Court cases cited by Plaintiff address the applicability of jurisdictional statutes in both federal law and the Bankruptcy Code, and whether the term "debt collector" includes an attorney who attempts to collect consumer debts through litigation. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992); *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995); *Heintz v. Jenkins*, 514 U.S. 291 (1995). Plaintiff does not cite to any Supreme Court decision supporting her position that the Bankruptcy Code does not preclude her FDCPA claims under the circumstances present here.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's complaint is granted, and Plaintiff's complaint is dismissed in its entirety. This determination is not "meant to preclude [Plaintiff's] ability to seek relief in the bankruptcy court or to express any view about the merits of any claim that [she] might bring in that forum." *Yaghobi*, 145 F. App'x at 699. The Clerk of Court is directed to close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: January 23, 2015
      Rochester, New York